# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44975

DONALD CRAIG FRIZZELL, individually, and as a beneficiary of the CLIFTON AND MARJORIE FRIZZELL FAMILY TRUST,

    Plaintiff-Appellant,

v.

EDWIN DEYOUNG, individually, and in his capacity as trustee of the CLIFTON AND MARJORIE FRIZZELL FAMILY TRUST; DARLENE DEYOUNG, individually, and in her capacity as beneficiary of the CLIFTON AND MARJORIE FRIZZELL FAMILY TRUST; and on behalf of the marital community of EDWIN DEYOUNG and DARLENE DEYOUNG, husband and wife,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2017 Term

2018 Opinion No. 30

Filed: April 4, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

District court order dismissing complaint, <u>reversed and remanded</u>.

GiantLegal, PLLC, Spokane, WA, for appellant. Robin L. Haynes argued.

Lake City Law Group, Coeur d'Alene, for respondent. Scot D. Nass argued.

_____

BURDICK, Chief Justice.

Donald Craig Frizzell ("Frizzell") appeals the Kootenai County district court's dismissal of his complaint. Frizzell and the defendants, Edwin and Darlene DeYoung (collectively, the "DeYoungs"), were parties to an existing trust, with Edwin serving as trustee and Frizzell and Darlene as beneficiaries. The parties entered into an agreement pursuant to the Trust and Estate Dispute Resolution Act ("TEDRA agreement"). The TEDRA agreement was designed to modify the existing trust terms and also resolve issues related to Edwin's administration of the trust in his role as trustee. Two years after the TEDRA agreement was filed with the district court,

1

Frizzell filed suit against the DeYoungs alleging Edwin was breaching the TEDRA agreement and his fiduciary duties. The district court granted the DeYoungs' motion to dismiss based on provisions in the TEDRA agreement that purported to hold Edwin harmless for any actions taken in his role as trustee. The district court also stated Frizzell was bound by the TEDRA agreement to pursue nonjudicial dispute resolution, rather than file a lawsuit for Edwin's breach of duty. Frizzell timely appealed to this Court. We reverse the district court's order dismissing Frizzell's complaint and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Clifton and Marjorie Frizzell created a trust ("Trust") in June of 2009 that contained the various properties and possessions the couple owned, and provided for their distribution. Both Clifton and Marjorie passed away in 2011. Haley Baker was named in the Trust as trustee, but declined the appointment. Edwin DeYoung was appointed successor trustee on October 29, 2011. In 2013, Frizzell commenced litigation regarding the administration of the Trust. Pursuant to that litigation, the parties entered into a TEDRA agreement to resolve disputes related to that administration of the Trust. The TEDRA agreement was filed in district court on October 31, 2014.

The TEDRA agreement modified certain terms of the Trust relating to what property or money different beneficiaries were to receive and when they would receive it. The agreement also contained various provisions purporting to release, indemnify, and hold Edwin harmless for all actions taken in his role as trustee. The parties disagree about whether the release, indemnity, and hold harmless provisions apply only to claims that arose prior to the TEDRA agreement, or if it releases Edwin from liability for all past and future claims.

In October of 2016, Frizzell filed a complaint in district court alleging thirteen causes of action relating to Edwin's administration of the Trust. Frizzell alleged that after the TEDRA agreement was signed and filed, Edwin did not follow through with his obligations under the TEDRA agreement and breached his fiduciary duty. This included Edwin's failure to notify Frizzell that one of the properties Frizzell thought he would be receiving as part of the TEDRA agreement actually was not a part of the Trust at all, but rather was in the Estate of Marjorie, which was managed by Edwin's wife (and Frizzell's sister) Darlene. Frizzell also claimed that Edwin failed to pay all net rental income to Frizzell, as was required under the TEDRA agreement. The rental properties generated over $130,000 during the year but Frizzell only

2

received $6,123 from Edwin, and Edwin paid himself $49,303. Frizzell's complaint also alleged that Edwin engaged in several other acts in breach of the TEDRA agreement and in breach of Edwin's fiduciary duties including: that Edwin directly competed with Frizzell, Edwin engaged in negligent supervision of a rental manager, Edwin failed to transfer Frizzell management of the properties, Edwin failed to protect trust property, and Edwin failed to provide an accounting or explain his excessive compensation.

The DeYoungs filed a motion to dismiss, arguing the TEDRA agreement's indemnity, release, and hold harmless provisions shielded Edwin from any and all liability for his administration of the Trust. The district court concluded that the provisions in the TEDRA agreement purporting to hold Edwin harmless were unambiguous and that the language indemnifies, releases, and holds Edwin harmless from all claims, past or future, in Edwin's role as trust administrator. The district court also concluded that the TEDRA agreement bound Frizzell to pursue nonjudicial dispute resolution, or to petition the court to enforce the TEDRA agreement, rather than file a lawsuit for breach of fiduciary duty. Accordingly, the district court granted the DeYoungs' motion to dismiss. The district court also concluded that because Frizzell was bound to pursue nonjudicial dispute resolution, his complaint was unreasonable, frivolous, and without foundation. Therefore, the district court awarded Edwin attorney fees. Frizzell timely appealed.

## II.    ISSUES ON APPEAL

1. Whether the district court erred in dismissing Frizzell's complaint when it found the TEDRA agreement shielded Edwin from all liability arising from his role as trustee.

2. Whether the district court erred in dismissing Frizzell's complaint when it found the TEDRA agreement bound Frizzell to pursue nonjudicial dispute resolution.

3. Whether either party is entitled to attorney fees at the district court and on appeal.

## III.    STANDARD OF REVIEW

When this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6), we apply the same standard of review we apply to a motion for summary judgment. After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated. The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claims.

In addition, this Court reviews an appeal from an order of summary judgment *de novo*, and this Court's standard of review is the same as the standard used by the trial court in ruling on a

3

motion for summary judgment. Ergo, a district court's dismissal of
a complaint under I.R.C.P. 12(b)(6) shall be reviewed *de novo*.

*Coal. for Agric.'s Future v. Canyon Cnty.*, 160 Idaho 142, 145, 369 P.3d 920, 923 (2016)
(citations omitted).

## IV.    ANALYSIS

### A.    The district court erred in dismissing Frizzell's complaint because the parties were not able to waive future claims for negligence or breach of fiduciary duty.

The district court concluded that the plain language in the TEDRA agreement
unambiguously demonstrated that Frizzell agreed to hold Edwin "harmless from *any* claim
relating to [Edwin's] administration of the Trust." Thus, the district court determined Frizzell
had waived all claims against Edwin for negligence and breach of fiduciary duty regardless of
when the alleged negligence or breach of fiduciary duty occurred. For the reasons discussed
below, we reverse the district court's dismissal of Frizzell's complaint.

The TEDRA agreement is ambiguous because the indemnity, release, and hold harmless
provisions can be interpreted in two ways. The first possible interpretation is that the TEDRA
agreement was intended to settle all past claims for negligence and breach of fiduciary duty
occurring prior to the execution of the agreement in 2014. The second possible interpretation is
that the TEDRA agreement intended to waive all future claims for negligence and breach of
fiduciary duty arising after the TEDRA agreement was executed. For the reasons discussed
below, any attempt to waive all future claims for negligence and breach of fiduciary duty
occurring after the agreement was executed is void as against public policy.

The relevant portions of the TEDRA agreement are as follows:

Paragraph 2 of the TEDRA agreement provides,

> Nature of this Agreement. This Agreement is intended to be a binding
> agreement to resolve certain issues that have arisen or could arise in the future
> between the Parties in a manner that will avoid the necessity of further litigation
> or court proceedings in this matter to resolve such issues and further will serve as
> written documentation to third Parties of the Parties' agreement.

Paragraph 5.5 provides in pertinent part,

> Full Agreement. . . . [Frizzell] shall indemnify, defend, and hold harmless
> Ed[win] as Trustee against any claims, lawsuits or other actions, including all
> costs of attorney fees incurred in defense of such claims, lawsuits, or other
> actions, arising as a result of [Frizzell]'s management of the real properties
> described . . . above.

Paragraph 6 provides,

4

       <u>Donald C. Frizzell's Indemnification of Edwin J. DeYoung</u>. [Frizzell] on behalf of himself and as custodian . . . agrees to indemnify, defend, and hold Ed[win] harmless against any claims, lawsuits, or other actions . . . advanced against Ed[win] by [Frizzell] or [Frizzell]'s children or heirs relating to Ed[win]'s administration of the [Trust].

Paragraph 9 provides in pertinent part,

       <u>Release and Hold Harmless</u>. The Beneficiaries, on behalf of themselves, their heirs and successors-in-interest . . . their agents and assigns ([Releasors]) release, discharge, and indemnify Ed[win] and Ed[win]'s heirs, successors-in-interest, agents, and assigns ([Releasees]), from any and all actual or potential claims or causes of action, of whatsoever kind or nature, whether at law or in equity, whether known or unknown, accrued or yet to arise or accrue, including but not limited to any claims of negligence or breach of fiduciary duty or breach of contract, which relate to or arise out of any action, omission or conduct of Ed[win] in his capacity as Trustee that the Releasors now have, ever had, may have had, or may thereafter have from the inception of the . . . Trust . . . *up to the date this Agreement is executed*. Such release is *limited to claims that were asserted or could have been asserted* by the Releasors against the Releasees arising out for or related in any way to the administration of the . . . Trust, the distribution of the trust property . . . , and all liability related to the . . . Trust that might arise between the Releasors and the Releasees *now or in the future*.

The TEDRA agreement at issue was entered into pursuant to Idaho Code section 15-8-101, titled the Trust and Estate Dispute Resolution Act (TEDRA). TEDRA sets forth generally applicable provisions for the resolution of disputes involving trusts. I.C. § 15-8-101. TEDRA states, "[t]he provisions of this chapter are intended to provide nonjudicial methods for the resolution of matters by agreement." I.C. § 15-8-101(2). TEDRA gives courts "full and ample power and authority under this chapter to administer and settle" trust and estate disputes. I.C. § 15-8-102(1). Moreover, TEDRA states that if TEDRA is ever "inapplicable, insufficient or doubtful" as to the settlement of trust and estate matters, the court "has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper. . . ." I.C. § 15-8-102(2).

When interpreting a trust instrument, such instrument must be construed as a whole, considering all parts and reading each part in light of the whole instrument. *Matter of Estate of Kirk*, 127 Idaho 817, 827, 907 P.2d 794, 804 (1995). The Court's primary objective in construing a document is to discover the intent of the parties by viewing the document in its entirety. *Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992). "The determination of a contract's meaning and legal effect are questions of law to be decided by the court where the contract is

clear and unambiguous." *Id.* When the document is ambiguous, the primary consideration is determining the intent of the parties. *Id.* "[I]n determining whether a contract is ambiguous, [the Court's] task is to ascertain whether the contract is reasonably subject to conflicting interpretation." *Id.* at 997, 829 P.2d at 1346.

In Idaho, "a party may contract to absolve himself from certain duties and liabilities under a contract subject to certain limitations." *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 100 Idaho 175, 178, 595 P.2d 709, 712 (1979). "However, it is nevertheless well established that courts look with disfavor on such attempts to avoid liability and construe such provisions strictly against the person relying on them, especially when that person is the preparer of the document." *Id.* "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals, or which limits the time within which he may thus enforce his rights, is void as it is against the public policy of Idaho." I.C. § 29-110.

In this case, to the extent the TEDRA agreement purported to hold Edwin harmless for claims of future negligence and breaches of fiduciary duty, such portions of the agreement are void as against public policy. Under Idaho Code section 68-106, "a trustee has a duty to act with due regard to his obligation as a fiduciary." Though the agreement at issue was entered into pursuant to TEDRA, "[TEDRA] shall not supersede, but shall supplement, any otherwise applicable provisions and procedures contained in . . . Idaho Code, or other Idaho law." I.C. § 15-8-101. Thus, the fact that the agreement at issue was entered into pursuant to TEDRA does not operate to relieve Edwin from his duty to act with due regard to his obligation as trustee, as required under Section 68-106. When the district court determined Edwin was shielded from all future liability in his role as trustee, the order immunized Edwin in his role as trustee, and thus was in direct contravention with Section 68-106.

As stated above, this Court disfavors provisions exculpating one's own liability, and while one can settle past breaches of duty, one cannot exempt themselves from liability for future breaches of duty. *See Morrison v. Nw. Nazarene Univ.*, 152 Idaho 660, 663, 273 P.3d 1253, 1256 (2012); *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 499, 465 P.2d 107, 110 (1970). Accordingly, the provisions in the TEDRA agreement exculpating Edwin from liability are enforceable only to the extent they settle past claims of negligence and breach of fiduciary duty committed before the agreement was executed in 2014. To the extent the provisions purport to exculpate Edwin from liability for future negligence or breaches of fiduciary duty occurring after

the TEDRA agreement, such provisions are void as against public policy. Because Frizzell's complaint alleged claims for breach of fiduciary duty that occurred after the TEDRA agreement was executed, Frizzell's complaint was not barred. Accordingly, the district court erred when it dismissed Frizzell's complaint.

**B.      Frizzell was not prohibited by TEDRA or the parties' TEDRA agreement from seeking judicial action based on Edwin's alleged breaches of the TEDRA agreement.**

The remaining issue is whether Frizzell was bound under TEDRA to seek nonjudicial dispute resolution or follow some other procedure, rather than file a complaint against Edwin. The district court concluded that Frizzell was required to pursue nonjudicial dispute resolution, or petition the court to enforce the terms of the TEDRA agreement, but that Frizzell was not permitted to file a complaint against the DeYoungs under the TEDRA agreement. For the reasons discussed below, the district court erred.

As discussed above, Idaho's TEDRA states that its purpose "is to set forth generally applicable statutory provisions for the resolution of disputes and other matters involving trusts and estates . . . ." I.C. § 15-8-101. "The provisions of this chapter are intended to provide nonjudicial methods for the resolution of matters by agreement. This chapter also provides for judicial resolution of disputes if a nonjudicial resolution is not obtained . . . ." *Id.* TEDRA also states that the courts shall have "full and ample power and authority" to administer and settle trust and estate matters. I.C. § 15-8-102(1). Moreover, if TEDRA is ever "inapplicable, insufficient or doubtful" as to the settlement of trust and estate matters, the court "has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper . . . ." I.C. § 15-8-102(2).

Under TEDRA, any party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter defined in section 15-8-103, or with respect to the resolution of any other case or controversy. I.C. § 15-8-201(1). TEDRA goes on to say, "[a] judicial proceeding under this chapter may be commenced as a new action or as an action incidental to an existing judicial proceeding relating to the same trust or estate or nonprobate asset." I.C. § 15-8-202(2).

Idaho's TEDRA does not specify the procedure a party must follow to enforce a TEDRA agreement should a party believe the TEDRA agreement has been breached. Aside from allowing for a judicial proceeding to determine a party's rights and legal relations, TEDRA lists no process for an aggrieved party to follow if the TEDRA agreement has been breached. *See* I.C.

§§ 15-8-101–15-8-305. In contrast, the Washington version of TEDRA provides instruction on the steps a party must take when enforcing a TEDRA agreement. Wash. Rev. Code Ann. § 11.96A.270. The language in the Washington TEDRA mirrors the Idaho TEDRA in many parts, with one important distinction. The Washington TEDRA states a party must "proceed first with mediation and then arbitration before formal judicial procedures may be utilized." *Id.* The Washington TEDRA lays out nonjudicial steps a party must take before judicial procedures can be initiated. *Id.* In contrast, the Idaho TEDRA does not mandate any procedure a party needs to follow before they can initiate judicial procedures related to the TEDRA agreement. I.C. §§15-8-101–15-8-305.

Moreover, there is no language in the Idaho TEDRA prohibiting a party to a TEDRA agreement from filing suit against another party to the agreement. Nor is there any language in the parties' TEDRA agreement detailing the steps a party should take if they feel the agreement has been breached, or how a party should enforce the agreement. The parties' TEDRA agreement does not prescribe a specific method for enforcement in the case of breach, nor does it require nonjudicial resolution attempts prior to filing suit.

Though there is no mandated procedure in Idaho's TEDRA, the Idaho Rules of Civil Procedure provide that, "[a] civil action must be commenced by filing a complaint, petition or application with the court." I.R.C.P. 3(b). The Idaho Rules of Civil procedure allow for Frizzell's filing of a complaint in this civil action. *Id.* Thus, the Rules of Civil Procedure apply, and allow for Frizzell's filing of the present complaint.[1]

In this case, Frizzell was permitted to file his lawsuit against the DeYoungs, and his complaint should not have been dismissed on a 12(b)(6) motion. Put simply, TEDRA contains no

---

[1] TEDRA purports to exclude the Idaho Rules of Civil Procedure from applying to proceedings under TEDRA. *See* I.C. § 15-8-202(1) ("The provisions of this chapter shall control over any inconsistent provision of the Idaho rules of civil procedure); I.C. § 15-8-202(4) ("The Idaho rules of civil procedure apply to judicial proceedings under this chapter only to the extent that they are consistent with this chapter, unless otherwise provided by Idaho Code, or ordered by the court under section 15-8-102, Idaho Code, or provided by other applicable Idaho rules of civil procedure."). TEDRA's attempt to "supplant" the Idaho Rules of Civil Procedure causes this Court to seriously question the constitutionality of this portion of TEDRA. Article 5, section 2 of Idaho Constitution provides in part, "[t]he judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, and such other courts inferior to the Supreme Court as established by the legislature." Article 5, section 13 provides, "[t]he legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government[.]" This Court has the inherent power to make rules governing procedure in all the courts of Idaho. I.C. § 1-212. Thus, "[t]he Supreme Court shall prescribe, by general rules, for all the courts of Idaho . . . the practice and procedure in all actions and proceedings." I.C. § 1-213. Here, where TEDRA attempts to dictate when the Idaho Rules of Civil Procedure will apply, TEDRA usurps this Court's inherent rulemaking authority, and thus calls into question TEDRA's constitutionality.

8

limitation on the remedies available to Frizzell to enforce the TEDRA agreement. Neither TEDRA nor the parties' TEDRA agreement requires Frizzell to submit to nonjudicial dispute resolution before initiating the judicial process. There is no language in TEDRA or the parties' TEDRA agreement that requires or specifies the nonjudicial procedure Frizzell should have followed. Additionally, the Idaho Constitution provides that, "[t]he district court shall have original jurisdiction in all cases, both at law and in equity . . . ." Idaho Const. art. V, § 20. Nothing in TEDRA limited this jurisdiction. Thus, Frizzell's suit was not barred and the district court's dismissal of his complaint is reversed.

**C.     Attorney fees at the district court and on appeal.**

The district court awarded attorney fees to the DeYoungs, as the prevailing party, under Idaho Code sections 12-121, 15-8-208,  and Idaho Rules of Civil Procedure 54(d)(1) and 54(e). However, because the district court erred in granting the DeYoungs' motion to dismiss Frizzell's complaint, the DeYoungs are no longer the prevailing party. *See Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 771, 203 P.3d 694, 701 (2009). Thus, we vacate the district court's award of attorney fees against Frizzell and remand for a determination of the prevailing party.

On appeal, both Frizzell and the DeYoungs seek attorney fees pursuant to Idaho Code section 12-121, Idaho Rule of Civil Procedure 54, TEDRA section 15-8-208, and the TEDRA agreement. This Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe v. (2016-7)*, 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.' " *Id.* (citation omitted). Additionally, Idaho Rule of Civil Procedure 54(e) provides that, "In any civil action the court may award reasonable attorney fees . . . to the prevailing party . . . when provided for by any statute or contract." I.R.C.P. 54(e). TEDRA as well as the parties' TEDRA agreement also provide for attorney fees to the prevailing party. I.C. § 15-8-208.

However, an award of attorney fees is improper at this juncture, as it is not yet clear who the prevailing party will be. *See Bailey v. Peritus I Assets Mgmt.*, *LLC*, 162 Idaho 458, ___, 398 P.3d 191, 196 (2017). Frizzell's claims against the DeYoungs must be resolved before the prevailing party can be determined. Once a final judgment is entered, "we direct the district court to determine which party has prevailed and whether the prevailing party is entitled to attorney

fees related to this appeal." *Id.*; *See Wolford v. Montee*, 161 Idaho 432, 443, 387 P.3d 100, 111 (2016).

## V.    CONCLUSION

We reverse the district court's dismissal of Frizzell's complaint and remand for proceedings consistent with this opinion. No costs or attorney fees at this time on appeal.

Justices JONES, HORTON, BRODY and BEVAN CONCUR.