**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 47543

DONALD CRAIG FRIZZELL, individually
and as a beneficiary of the CLIFTON AND
MAJORIE FRIZZELL FAMILY TRUST,

    Plaintiff/Appellant,

v.

EDWIN DEYOUNG, individually and in his
capacity as trustee of the CLIFTON AND
MAJORIE FRIZZELL FAMILY TRUST;
DARLENE DEYOUNG, individually and in
her capacity as a beneficiary of the CLIFTON
AND MAJORIE FRIZZELL FAMILY
TRUST; et. al.

    Defendants/Respondents.

Boise, November 2020 Term

Filed: December 4, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K.C. Meyer, District Judge.

The ruling of the district court is <u>affirmed</u>. Costs and attorney fees on appeal <u>awarded</u> to the DeYoungs.

GIANTlegal PLLC, Spokane, attorneys for appellant. Robin Haynes argued.

Scot D. Nass, Coeur d'Alene, attorney for respondent. Scot Nass argued.

_____

BEVAN, Justice

This appeal arises from a district court's alleged failure to follow this Court's holding in *Frizzell v. DeYoung*, 163 Idaho 473, 415 P.3d 341 (2018) (hereinafter *Frizzell I*) upon remand. In *Frizzell I*, we held that an agreement entered into pursuant to the Trust and Estate Dispute Resolution Act ("TEDRA"), Idaho Code sections 15-8-101, *et seq.*, by Donald Craig Frizzell and Edwin and Darlene DeYoung was only enforceable to the extent that it settled past claims. As a

1

result, the provisions that purported to exculpate Edwin from liability for future negligence or breaches of fiduciary duty after the agreement was executed were deemed void as against public policy. In this appeal, Frizzell argues that after the case was remanded, the district court failed to follow the law of the case by erroneously allowing the DeYoungs to introduce evidence, testimony, and argument concerning conduct that occurred before the agreement was executed. Frizzell also asserts the district court abused its discretion in awarding the DeYoungs attorney fees without considering the factors in Idaho Rule of Civil Procedure 54(e). For the following reasons, we disagree with Frizzell's arguments and affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a dispute between Donald Frizzell, a beneficiary of the Clifton and Marjorie Frizzell Family Trust ("Trust"), Edwin DeYoung, the trustee of the Trust and Frizzell's brother-in-law, and Darlene DeYoung, a beneficiary of the Trust and Frizzell's half-sister. In 2013, Frizzell sued Edwin in his capacity as trustee. That dispute was resolved when the parties entered into a nonjudicial dispute resolution agreement (the "TEDRA Agreement"). The TEDRA Agreement modified portions of the underlying Trust and directed distributions be made to the beneficiaries under it. The TEDRA Agreement also contained various provisions purporting to release, indemnify, and hold Edwin harmless for all actions taken in his role as trustee. The parties disagreed about whether these provisions applied only to claims that arose prior to the TEDRA Agreement or if they also released Edwin from liability for all future claims.

On October 6, 2016, Frizzell sued the DeYoungs to enforce provisions of the TEDRA Agreement and brought suit against Edwin individually for breach of fiduciary duty as trustee. *Frizzell I*, 163 Idaho at 475, 415 P.3d at 343. Frizzell alleged that after the TEDRA Agreement was signed and filed, Edwin breached his fiduciary duty by not following through with his obligations under the Agreement. This included Edwin's failure to notify Frizzell that one of the properties Frizzell thought he would be receiving was not actually part of the Trust. *Id*. In addition, Frizzell claimed Edwin failed to pay all net rental income to him as was required under the Agreement. The DeYoungs moved to dismiss, arguing the TEDRA Agreement's indemnity clause shielded Edwin from all liability for his administration of the Trust. *Id*. at 476, 415 P.3d at 344. The district court agreed and dismissed Frizzell's complaint. *Id*. On appeal, this Court held the district court erred in dismissing Frizzell's complaint because the TEDRA Agreement could not waive Frizzell's claims for a future breach of fiduciary duty against Edwin. *Id*. at 476–77, 415 P.3d

2

at 344–45. The Court held the provisions in the TEDRA Agreement exculpating Edwin from liability were only enforceable to the extent that they settled past claims of negligence and breach of fiduciary duty committed before the Agreement was executed in 2014. *Id.* at 478, 415 P.3d at 346. The Court remanded the case to the trial court for further proceedings. *Id.* at 480, 415 P.3d at 348.

On May 18, 2018, Frizzell filed an amended complaint against the DeYoungs alleging damages arising from Edwin's post-TEDRA actions and inactions, including: lost rental income, unmitigated and unrepaired flood and storm damage to a property, losses related to deferred and needed maintenance to certain properties, failure to return or transfer rental and utility deposits, and attorney fees. The DeYoungs filed an answer and counterclaim, asserting Frizzell breached his obligations under the TEDRA Agreement by failing to timely transfer the four properties at issue and failing to pay for the associated legal costs.

After a four-day trial, the jury returned a verdict for the DeYoungs, finding that Frizzell breached the TEDRA Agreement. The jury awarded the DeYoungs $70,000. The DeYoungs later filed a motion requesting attorney fees and costs under Idaho Rule of Civil Procedure 54, the TEDRA Agreement, and Title 15 of the Idaho Code. In support, the DeYoungs filed an affidavit of counsel that addressed the Rule 54 factors and detailed the billing entries in this case. The DeYoungs sought $98,478.80 in attorney fees and costs: $91,240 in attorney fees, $6,213.80 for costs as a matter of right, and $1,025 in discretionary costs. Frizzell did not file an objection to the DeYoungs' motion.

On October 1, 2019, the district court entered a judgment awarding the DeYoungs $168,478.80 against Frizzell individually and as a beneficiary of the Trust. On November 4, 2019, Frizzell filed a timely notice of appeal.

### III. ISSUES ON APPEAL

1.  Whether the district court admitted evidence inconsistent with the Court's ruling in *Frizzell v. DeYoung*, 163 Idaho 473, 415 P.3d 34 (2018).

2.  Whether the district court abused its discretion in awarding attorney fees by failing to comply with Idaho Rule of Civil Procedure 54(e).

3.  Whether either party is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

Decisions regarding the admission of evidence are reviewed for an abuse of discretion. *Dep't of Envtl. Quality v. Gibson*, 166 Idaho 424, 432–33, 461 P.3d 706, 714–15 (2020) (citing

3

*Karlson v. Harris*, 140 Idaho 561, 564, 97 P.3d 428, 431 (2004)). We review discretionary decisions under the familiar four-part standard, asking whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "The party asserting the abuse of discretion carries the burden of demonstrating that an abuse of discretion occurred." *Nielson v. Talbot*, 163 Idaho 480, 489, 415 P.3d 348, 357 (2018) (citing *Green River Ranches, LLC v. Silva Land Company, LLC*, 162 Idaho 385, 397 P.3d 1144, 1151 (2017)).

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. "Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party is affected." *Burgess v. Salmon River Canal Co*., 127 Idaho 565, 574, 903 P.2d 730, 739 (1995) (citing I.R.E. 103; I.R.C.P. 61). Error that does not affect a substantial right is considered harmless and is disregarded. *Bolger v. Lance*, 137 Idaho 792, 797, 53 P.3d 1211, 1216 (2002) (citing I.R.C.P. 61; *Perry v. Magic Valley Reg'l Med. Ctr*., 134 Idaho 46, 50–51, 995 P.2d 816, 820–21 (2000)).

## V. ANALYSIS

In general, this Court "will uphold a jury verdict if there is evidence of sufficient quantity and probative value that a reasonable mind could reach a similar conclusion to that of the jury." *Chapman v. Chapman*, 147 Idaho 756, 759, 215 P.3d 476, 479 (2009) (internal citation omitted). The appellant bears the burden of proving error. *Id*. at 764, 215 P.3d at 484 (citing *Garcia v. Pinkham*, 144 Idaho 898, 900, 174 P.3d 868, 870 (2007)). While Frizzell acknowledges the high bar to overturn a jury verdict in Idaho, he contends a remand for further proceedings is appropriate where a district court violates the law of the case. Frizzell maintains that he did not receive a fair trial based on the district court's evidentiary rulings that allowed the DeYoungs to introduce evidence concerning the settlers' intent and prior lawsuits. We disagree and will address each issue in turn.

4

**A.   The district court did not admit evidence inconsistent with this Court's holding in *Frizzell I*.**

Frizzell argues that the law of this case is simple: the TEDRA Agreement did not resolve any future claims between Frizzell and the DeYoungs; it only resolved claims up to the date the TEDRA Agreement was executed, October 1, 2014. Frizzell alleges the district court acted contrary to the law of the case when it admitted, over objection, testimony that the TEDRA Agreement resolved all future claims and that Frizzell was merely bringing "the same lawsuit." The DeYoungs agree that this Court's decision in *Frizzell I* clearly dictated that the TEDRA Agreement could not waive future acts of negligence or breach, but argue the district court correctly applied the law of the case upon remand. While *Frizzell I* guaranteed Frizzell the ability to have his allegations heard by a trier of fact, the jury rejected his claims.

The "law of the case" doctrine is well established in Idaho. This doctrine provides that "upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal. . . ." *Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000) (quoting *Suitts v. First Sec. Bank of Idaho*, 110 Idaho 15, 21, 713 P.2d 1374, 1380 (1985)). This "doctrine also prevents consideration on a subsequent appeal of alleged errors that might have been, but were not, raised in the earlier appeal." *PHH Mortg. v. Nickerson*, 164 Idaho 33, 38, 423 P.3d 454, 459 (2018) (quoting *ParkWest Homes, LLC v. Barnson*, 154 Idaho 678, 683, 302 P.3d 18, 23 (2013)).

*Frizzell I* concerned the district court's dismissal of Frizzell's complaint against the DeYoungs based on its conclusion that the TEDRA Agreement unambiguously indemnified, released, and held Edwin harmless from all claims, past or future, in Edwin's role as trust administrator. *Id*. at 475, 415 P.3d at 343. On appeal, this Court held the district court erred in dismissing Frizzell's complaint because the TEDRA Agreement could not waive Frizzell's future claims for breach of fiduciary duty against Edwin. *Id*. at 476–77, 415 P.3d at 344–45. We held the provisions in the TEDRA Agreement exculpating Edwin from liability were only enforceable to the extent that they settled past claims of negligence and breach of fiduciary duty committed before the Agreement was executed in 2014. *Id*. at 478, 415 P.3d at 346. The Court remanded the case to the trial court for further proceedings. *Id*. at 480, 415 P.3d at 348.

5

However, the "law of the case" here is not as expansive as Frizzell advocates. In *Frizzell I*, this Court held that Edwin could not contract away future claims of negligence and breach of fiduciary duty, which is why the district court erred in dismissing Frizzell's complaint. That said, we gave no guidance on what evidence the district court could permit on remand—only that Frizzell had a right to have his claims go forward. We also acknowledged that the TEDRA Agreement provisions that exculpated Edwin from liability were enforceable to the extent that they settled past claims of negligence and breach of fiduciary duty. Still, throughout his briefing, Frizzell makes several sweeping arguments regarding the evidence presented by the DeYoungs at trial. We will address Frizzell's specific arguments, but we "will not search the record on appeal for error." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003)).

First, Frizzell argues the district court erroneously allowed Darlene and Edwin to spend a great deal of time testifying about pre-TEDRA matters before any post-TEDRA questions were asked. Frizzell, however, did not object to the introduction of this evidence at trial. For an objection to be preserved for appellate review, "either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context." *Hansen v. Roberts*, 154 Idaho 469, 473, 299 P.3d 781, 785 (2013) (internal quotation omitted). Frizzell's failure to object to this line of testimony at trial precludes review on appeal.

Second, Frizzell protests Edwin's characterization of the trial as his "fourth lawsuit" he defended as trustee. Frizzell argues that the three prior lawsuits involved separate subject matter. However, Edwin's subsequent testimony resolves this concern:

> Q: And is it true that everything in the TEDRA Agreement, all your – any previous allegations about breaches by either you or Mr. Frizzell were waived and released pre TEDRA? Correct.
>
> A: Yes.
>
> Q: And so is it also true that this lawsuit is not about any allegations of fiduciary breaches from the start of the Trust forward, just from the date of the TEDRA forward; correct?
>
> A: Correct.
>
> Q: So Mr. Frizzell is not bringing the same lawsuit. Causes of action might be the same, but you would agree that this is not the same lawsuit, it's not about the same set of facts?
>
> A: Yes, it's a different period of time.

6

Although this testimony was solicited during redirect examination by Frizzell's attorney, the jury was still put on notice that the matters it was to consider concerned Edwin's post-TEDRA actions. Thus, the reference to four lawsuits did not unduly prejudice Frizzell, given Edwin's clarifying testimony. I.R.C.P. 61.

Third, and most importantly, Frizzell objected to the testimony given by Greg Embrey, the attorney who previously represented the DeYoungs in the 2013 proceedings. During opening statements the DeYoungs introduced Embrey, who drafted the TEDRA Agreement, as a "litigation specialist" and "quarterback of the TEDRA" who was hired to defend the 2013 lawsuit, which the DeYoungs characterized as "the [s]ame lawsuit, basically, that we're here for now." Frizzell argues Embrey's following testimony was directly contrary to this Court's holding in *Frizzell I*:

> Q: First of all, would you read that provision and then explain what that meant as you drafted this TEDRA.
>
> A: So this paragraph 2 is entitled "Nature of This Agreement," and it's just in a few -- just a few short words is saying that this agreement is intended to resolve the dispute between the parties, and that includes problematic issues or disputes now or that could arise in the future, the thought being at the point the TEDRA was signed, this trust is not going to be around long, we're going to empty it out, and the beneficiaries will go their separate ways and we're done.
>
> Q: And, in fact, the language indicates that it's intended to avoid the necessity of further litigation and court proceedings.
>
> A: Yeah, that very language is used in this. It's not only resolving the current dispute as it existed back in this point, October 2014, approximately, but future disputes. We're not going to revisit trust—related arguments, we're not going to come up with new things as we wind this down. Anything that happens in that process is covered. In other words, we're done fighting with each other, let's take our assets and get apart from each other.
>
> [Frizzell's attorney]: Your Honor, I'm going to object to the extent that the Supreme Court specifically ruled that as to the future acts in this case, Mr. Frizzell is allowed to pursue his claim.
>
> [DeYoungs' attorney]: He's describing the TEDRA agreement, what it says conceptually.
>
> THE COURT: I understand your objection and where you're going with it, but he is describing what the agreement says, and so I will overrule the objection.

Thus, Frizzell asserts that the district court committed reversible error by allowing Embrey to state, as the drafter, that the TEDRA Agreement was intended to resolve all current and future disputes between Frizzell and the DeYoungs, in contravention of our holding in *Frizzell I*.

7

We recognize that when read in a vacuum, Embrey's statement appears to be an erroneous admission contrary to *Frizzell I*. Indeed, it was likely erroneous to allow the drafter of a document that was already in evidence to explain it "conceptually" to the jury. We have long held that a document "must speak for itself, and, if it is sufficiently definite in its terms to enlighten the court of the intent of the parties, it will be enforced." *Allen v. Kitchen*, 16 Idaho 133, 100 P. 1052, 1055 (1909) (quoting *Kurdy v. Rogers*, 10 Idaho, 416, 423, 79 P. 195, 196 (1904)). Oral evidence is not admissible to supply the terms or conditions, nor to provide the intended meaning of the contract where the document itself is unambiguous. *See id.* However, Frizzell did not object on these grounds. The lone objection was based on the testimony contradicting our holding as to the law of the case. As a result, we find no evidence of substantial prejudice in the admission of this statement and will disregard errors that do not affect a party's substantial rights, especially where jury instructions cured any defect. I.R.C.P. 61. *See also Lakeland True Value Hardware, LLC v. Hartford Fire Insurance Company*, 153 Idaho 716, 724, 291 P.3d 399, 407 (2012) (holding that jury instructions that separately presented the distinct concepts and quoted the policy's precise language cured any prejudice that may have been caused by the claim's examiner's potentially confusing testimony).

Embrey's testimony explained that the TEDRA Agreement was intended to resolve earlier disputes related to the Trust and, read in context, his testimony is describing the plain language of the TEDRA Agreement. Furthermore, the jury instructions explained that the parties entered into the TEDRA Agreement, in October 2014, forming a contract between the parties that modified portions of the Trust. The district court, through its instructions, ultimately tasked the jury with deciding the factual question: Did either Edwin DeYoung or Don Frizzell breach the TEDRA Agreement or violate their respective duties to each other? These instructions put the jury on notice that it was only to consider the parties' post-TEDRA conduct. Further, as emphasized by the DeYoungs, the jury's finding that Frizzell breached the TEDRA Agreement is evidence that the jury could not have been under the impression that the TEDRA Agreement barred the current claims.

Fourth, Frizzell argues the district court erred when it sustained the DeYoungs' objection to his attempt to introduce testimony about the Supreme Court's decision in *Frizzell I* relating to the scope of the TEDRA Agreement. The DeYoungs argue that the district court properly found that this Court's ruling in *Frizzell I* was not relevant to the jury's determination of whether a breach

8

of duty had occurred since October 1, 2014, and that the phrasing of the question was unduly prejudicial and may have confused the jury.

During cross-examination by Frizzell's counsel, the following exchange took place with Mr. Embrey:

Q: Are you aware that post-TEDRA, problems did, in fact, arise with the execution of the TEDRA?

A: I'm not sure what you mean, "problems."

Q: Are you aware that based on those issues, the Supreme Court in Idaho unanimously decided as to these parties that the parties cannot waive future claims and expressly gave Mr. Frizzell a favorable decision?

[Respondent's Counsel] Objection; foundation, relevance, and move to strike.

THE COURT: Sustained. Granted. Jury, please do not consider the question posed by [Frizzell's counsel] concerning the Supreme Court decision.

Frizzell argues that this exchange exhibits the unfairness shown by the trial judge; the judge allowed the DeYoungs to admit extensive evidence about pre-TEDRA facts, while limiting Frizzell from doing so. Frizzell's argument is misplaced. First, the question posed to Embrey was potentially confusing and Embrey lacked the foundation to comment on this Court's rulings. Frizzell's characterization of this Court's holding in *Frizzell I* as "expressly g[iving] Mr. Frizzell a favorable decision" would have confused the jury and was not relevant to clarifying what evidence the jury could consider. Second, as noted by the DeYoungs, testimony given by Masterson, Edwin, and Embrey when considered as a whole, focused on the Respondents' post-TEDRA claims. We agree that the district court properly sustained the DeYoungs' objection and did not show favoritism in doing so.

Ultimately, Frizzell maintains he went to great lengths to identify what was and was not resolved by the TEDRA Agreement to counter the DeYoungs efforts to introduce confusing evidence about the settlers' intent and prior lawsuits, which should have been foreclosed by this Court's holding in *Frizzell I* and the TEDRA Agreement itself. As explained, *Frizzell I* only held that Frizzell had a right to have his prospective claims go forward. It did not give guidance on what evidence the district court could allow on remand. In addition, Frizzell's own admissions undercut the arguments he is raising on appeal. Frizzell admits to repeatedly advising the jury that they were to consider only post-TEDRA claims. Frizzell cites testimony in which Masterson, Embrey, and Edwin all discuss post-TEDRA actions and acknowledge that the TEDRA Agreement only extinguished prior claims. We conclude that the district court did not abuse its discretion by

permitting the DeYoungs to introduce evidence on pre-TEDRA matters. The jury was still ultimately on notice through the parties' arguments and the court's own instructions that it was to consider only whether Edwin or Frizzell breached the TEDRA Agreement. In addition, the evidence concerning pre-TEDRA matters was discussed at trial only as necessary to establish the interplay between the Trust and the TEDRA Agreement.

**B.      The jury's verdict was supported by substantial and competent evidence.**

Relying on standards applicable to a party's motion for judgment notwithstanding the verdict (JNOV), Frizzell claims that the jury received substantial, competent, and uncontroverted evidence that Edwin breached the TEDRA Agreement. Frizzell argues that contrary to the language of the TEDRA Agreement, Edwin did not transfer: (1) all property management duties, and (2) all income, less expenses, to Frizzell, by October 1, 2014. Notably, Frizzell does not challenge the jury's finding that he breached the TEDRA Agreement.

A jury verdict may be set aside upon a motion for JNOV if it is not supported by substantial evidence. *Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 337, 986 P.2d 996, 1003 (1999). Such a motion should be granted only where there can be but one conclusion as to the verdict that reasonable minds could have reached and when that conclusion does not conform to the jury verdict. *Id*. (internal quotation omitted). That said, it does not appear Frizzell ever filed a motion for JNOV. On the other hand, this Court "will uphold a jury verdict if there is evidence of sufficient quantity and probative value that a reasonable mind could reach a similar conclusion to that of the jury." *Chapman v. Chapman*, 147 Idaho 756, 759, 215 P.3d 476, 479 (2009) (internal citation omitted). The appellant bears the burden of proving error. *Id*. at 764, 215 P.3d at 484. "[W]hen reviewing a jury verdict on appeal the evidence adduced at trial is construed in a light most favorable to the party who prevailed at trial." *Van v. Portneuf Med. Ctr., Inc.*, 156 Idaho 696, 700–01, 330 P.3d 1054, 1058–59 (2014) (quoting *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc*., 112 Idaho 722, 726, 735 P.2d 1033, 1037 (1987)). "On appeal, we will not substitute our opinion for that of the jury with respect to the credibility of witnesses or the weight to be given to, and inferences to be drawn from, the evidence." *Id*. (quoting *Phillips v. Erhart*, 151 Idaho 100, 106–07, 254 P.3d 1, 7–8 (2011)).

In concluding Edwin did not breach the TEDRA Agreement, the jury entered the following verdict concerning Edwin's actions as trustee:

10

Question No. 1: Did Edwin DeYoung fail to act as a prudent man in carrying out his duties as Trustee?

Answer to Question No. 1: <u>No</u>.

Question No. 2: Did Edwin DeYoung fail to keep the beneficiaries of the Trust reasonably informed and its administration?

Answer to Question No. 2: <u>No</u>.

Question No. 3: Did Edwin DeYoung, as Trustee of the Trust, breach the TEDRA Agreement?

Answer to Question No. 3: <u>No</u>.

Question No. 4: Did Edwin DeYoung, as Trustee, and/or Darlene DeYoung deprive Plaintiff of possession of monies:

Answer to Question No. 4: <u>No</u>.

The DeYoungs assert that the jury's verdict was supported by substantial evidence, with testimony presented by several key witnesses: Steve Masterson, a trust advisor and expert; Greg Embrey, an attorney; Chris Harrison, a CPA; and Edwin and Darlene DeYoung. Masterson testified that Edwin, as trustee, satisfied his duty to report and inform the beneficiaries of the Trust of the expenses and income. Further, Masterson testified that Edwin accounted for the income and expenses of Frizzell's properties until they were officially distributed to Frizzell during the post-TEDRA period. Masterson also testified that he had no knowledge that Edwin converted or stole monies rightfully due to Frizzell, acted willfully negligent or in bad faith, or acted grossly negligent. Ultimately, Masterson testified that Edwin satisfied his legal responsibilities to the beneficiaries of the Trust. The only criticism Masterson had of Edwin was "allowing himself to be bullied by Mr. Frizzell."

Embrey also provided extensive testimony that Edwin met the duties required of him by law, "especially in the time frame from the TEDRA signing forward." Embrey testified that Edwin went beyond the minimum duties required by law, continuing to work without being paid to get things resolved and spending much of his own money to try and transfer documents and assets to Frizzell, even though it was Frizzell's responsibility. Harrison likewise testified that Edwin acted prudently regarding decisions about the Trust's 2015 tax return. While the 2015 Trust tax return was never filed, it was because Frizzell refused to provide his social security number.

Edwin testified that he did not breach his duties as trustee and that he did everything within his power to communicate with both Frizzell and Darlene. Edwin communicated to both beneficiaries about what he was doing, how he was doing it, and responded to requests for more

information. In addition, Edwin testified he relied on legal advice from his attorney, accounting advice from his CPA, and the expert trust manager. Darlene testified that, as a beneficiary of the Trust, she had no criticisms of the way Edwin managed the Trust. Darlene also explained about four different occasions when she and Edwin tried to communicate with Frizzell concerning the Trust assets, but he cancelled or failed to follow through. Darlene also testified she and Edwin paid about $75,000 in out-of-pocket Trust expenses plus unpaid trustee fees for which they were not reimbursed.

In further support of the jury's verdict the DeYoungs highlight the testimony of Frizzell himself where he was unable to explain how Edwin breached the TEDRA Agreement:

> Question [Respondent's Attorney]: "How, in your opinion, did Ed[win] intentionally interfere with your rights as a beneficiary to the [T]rust?"
>
> Answer [Frizzell]: "I don't have an answer for you this moment."
>
> Question: "What facts do you have to support your assertion that Ed[win] did not behave in a neutral, professional manner in regard to assets being transferred to you?"
>
> Answer: "Well, partly I'm blanking my response that I had. I don't have an answer for you at this second."
>
> . . . .
>
> Question: "What facts do you have to support your assertion that Ed[win] failed to account for assets, expenses, and distributions of [T]rust assets other than a sole, incomplete, inaccurate, and self-serving accounting?"
>
> Answer: "I don't have an answer for you at this moment."
>
> . . . .
>
> Question: "The language "a sole, incomplete, inaccurate, and self-serving accounting," those were your words, were they not?"
>
> Answer: "In my complaint, I believe."
>
> . . . .
>
> Question: "What did [Edwin] do to fail to inform you either directly or through his agents?"
>
> Answer: "I don't have an answer for you at this moment."
>
> . . . .
>
> Question: "What duties as Trustee did, in your opinion, Ed[win] fail to perform?"
>
> Answer: "After the TEDRA Agreement?"
>
> Question: "Uh-huh."

12

Answer: "Okay. I believe he failed to maintain the properties, but I guess that's all I have at the moment."

This testimony was read into the record from a sworn deposition Frizzell gave earlier in the case. At trial, Frizzell explained he was "getting sick at the end of [the] deposition, so [he] was very tired and didn't answer some of the questions." On redirect examination at trial, Frizzell commented that he recalled "producing thousands of pages of documents to support [his] claims in this case[.]" However, Frizzell has yet to point this Court to what evidence specifically supports his claims. A generalized grievance is insufficient. Appellate arguments must be precise and provide this Court a clear target, supported by citations to the record, as a prerequisite for any argument made. As explained above, "[t]his Court will not search the record on appeal for error." *Bach*, 148 Idaho at 790, 229 P.3d at 1152 (citing *Suits*, 138 Idaho at 400, 64 P.3d at 326).

In short, Frizzell did nothing in his reply brief to counter the evidence in the record cited by the DeYoungs. Even if Frizzell offered competing testimony, this Court construes the evidence in a light most favorable to the party who prevailed at trial. *Van*, 156 Idaho at 700–01, 330 P.3d at 1058–59 (internal quotation omitted). Furthermore, this Court cannot substitute its own opinion with respect to the credibility of witnesses, the weight to be given to their testimony, or the inferences to be drawn from the evidence. *Id*. Based on the extensive testimony provided at trial, we conclude there is substantial evidence to support the jury's finding that Edwin did not breach the TEDRA Agreement.

## C. The district court did not abuse its discretion in awarding attorney fees to the DeYoungs.

Frizzell next argues the district erred in awarding attorney fees to the DeYoungs based on its failure to consider the factors listed in Rule 54 of the Idaho Rules of Civil Procedure. We disagree.

"[T]he calculation of a reasonable attorney fee is within the trial court's discretion." *H2O Envtl., Inc. v. Farm Supply Distributors, Inc*., 164 Idaho 295, 299, 429 P.3d 183, 187 (2018) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Rule 54(e)(3) of the Idaho Rules of Civil Procedure enumerates the eleven factors a court must consider and apply in entering an order on attorney fees. The Rule also includes a twelfth factor allowing the trial court wide discretion to consider "any other factor which the court deems appropriate in the particular case." I.R.C.P. 54(e)(3)(L). However, while the Court must always consider these factors in awarding fees, the court is only required to explain its reasoning in a written decision when a

13

timely objection is made: "If there was a timely objection to the amount of attorney fees, the court must include in the order its reasoning and the factors it relied on in determining the amount of the award." I.R.C.P. 54(e)(7). Any objection to a claim for attorney fees must be made in the same manner as an objection to costs as provided by Rule 54(d)(5). I.R.C.P. 54(e)(6). Rule 54(d)(5) provides "[f]ailure to timely object to the items in the memorandum of costs constitutes a waiver of all objections to the costs claimed."

Here, the DeYoungs filed a motion for attorney fees and affidavit in support after the jury returned a verdict in their favor. The DeYoungs filed the motion based on the contractual language contained within the TEDRA Agreement as well as Idaho Rule of Civil Procedure 54. Frizzell did not file an objection to their motion. Without a timely objection, the district court did not have to include a written decision addressing the Rule 54(e)(3) factors. I.R.C.P. 54(e)(7). Therefore, the district court did not abuse its discretion in awarding attorney fees.

**D.      The DeYoungs are entitled to attorney fees on appeal.**

Both parties assert they are entitled to attorney fees on appeal under Idaho Code section 12-120(3) and the TEDRA Agreement. The DeYoungs also argue for attorney fees under Idaho Code section 15-8-208, which authorizes an award of attorney fees for proceedings governed by the Trust and Estate Dispute Resolution Act. *See* I.C. §§ 15-8-101 to 15-8-305. The TEDRA Agreement provides:

> If any dispute between or among the Parties concerning this Agreement hereto results in litigation, the prevailing Party shall be reimbursed and indemnified by the Party not prevailing for all costs and expenses reasonably incurred by the prevailing Party in enforcing or establishing his or her rights hereunder, including without limitation court costs and reasonable attorneys' fees.

"Contractual terms providing for recovery of attorney fees incurred in actions to enforce the contract represent an election by the parties to place the risk of litigation costs on the one who is ultimately unsuccessful. Such provisions are ordinarily to be honored by the courts." *Zenner v. Holcomb*, 147 Idaho 444, 452, 210 P.3d 552, 560 (2009) (quoting *Holmes v. Holmes*, 125 Idaho 784, 787, 874 P.2d 595, 598 (Ct. App. 1994)). We conclude that the DeYoungs are the prevailing party on all issues raised on appeal. Thus, they are entitled to an award of attorney fees under the terms of the TEDRA Agreement.

**VI. CONCLUSION**

14

We affirm the district court's judgment in favor of the DeYoungs and award the DeYoungs attorney fees and costs on appeal as the prevailing party.

Chief Justice BURDICK and Justices BRODY, STEGNER and MOELLER, CONCUR.