# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50835

| | |
|---|---|
| KAREN CRANE, | ) |
| | ) Filed: July 12, 2024 |
| Plaintiff-Respondent-<br>Cross Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| | ) |
| v. | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| CLESTON GODFREY, KRISTIE | ) BE CITED AS AUTHORITY |
| GODFREY, TRI-C a Partnership, aka | ) |
| TRI-C PTN; and all persons unknown | ) |
| claiming any right, title, estate, lien or | ) |
| interest in the real property described in | ) |
| the complaint adverse to plaintiffs' | ) |
| ownership or any cloud on plaintiff's title, | ) |
| | ) |
| Defendants-Appellants-<br>Cross Respondents. | ) |
| | ) |
| CLESTON GODFREY, KRISTIE | ) |
| GODFREY, TRI-C a Partnership, aka | ) |
| TRI-C PTN; and all persons unknown | ) |
| claiming any right, title, estate, lien or | ) |
| interest in the real property described in | ) |
| the complaint adverse to plaintiffs' | ) |
| ownership or any cloud on plaintiff's title, | ) |
| | ) |
| Counterclaimants, | ) |
| | ) |
| v. | ) |
| | ) |
| KAREN CRANE and REX KELLER | ) |
| CRANE, wife and husband, and all other | ) |
| persons claim under them to the property | ) |
| described in the counterclaim, | ) |
| | ) |
| Counterdefendants. | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Caribou County. Hon. Mitchell W. Brown, District Judge.

Judgment dismissing Godfrey's counterclaims, affirmed; judgment denying Crane's trespass damages, affirmed; judgment denying Crane's costs of survey, affirmed; judgment reducing Crane's award of attorney fees and costs, vacated and case remanded.

Hearn Law PLC; John J. Bulger and John B. Ingelstrom, Pocatello, for appellants-cross respondents. John J. Bulger, argued.

Merrill & Merrill, Chartered; Kent A. Higgins, Pocatello, for respondent-cross appellant-cross respondent. Kent A. Higgins, argued.

_____

HUSKEY, Judge

Cleston Godfrey appeals from the district court's judgment dismissing his counterclaims of adverse possession and boundary by agreement. Karen Crane cross-appeals from the district court's judgment granting, in part, her claim for civil trespass damages; the judgment awarding, but reducing, her award of attorney fees and costs; and the judgment dismissing her claim of costs of survey as reasonable costs associated with investigating the trespass. For the following reasons, we affirm the judgments dismissing Godfrey's counterclaims; denying Crane's claim for trespass damages; and denying Crane's claim for costs of survey. We vacate the judgment granting, but reducing Crane's award of attorney fees, and remand for proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a boundary dispute between two adjoining property owners: Crane and Godfrey. The dispute involves a coterminous north/south boundary separating the south property (Godfrey property) and the north property (Crane property). A fence runs north/south along the western boundary of the two properties, and its purpose is to keep cattle off the land. Along the western fence line, at a location near the north/south coterminous boundary of the properties is a fencing cross brace. Crane paid for and repaired fencing north of the cross brace and Godfrey did the same to the south of the cross brace, as did their predecessors.

In 1997, Burke Godfrey (Monty) began farming the Godfrey property while leasing the land. In 2000, Monty purchased the Godfrey property and continued to farm the land until he sold it to Cleston Godfrey in 2015. Godfrey continued to farm the land. Crane purchased the Crane property in 2011, farmed it for several years, and then leased it to a tenant who farmed it.

2

The origin of this dispute began in 2016 after Crane's lessee informed her that the farming done by Godfrey at the coterminous north/south boundary of the properties might be encroaching on her land. Crane testified that her lessee told her the established crop line separating the properties did not match the cross brace which the lessee believed was the boundary marker for the north/south coterminous boundary of the two properties. About three years later, in 2019, Crane contacted Godfrey and informed him that she believed he was farming on some of her property. Crane testified that Godfrey told her it was nothing to be concerned about. A year later, in 2020, Crane contacted Godfrey again and informed him that he was farming on her land, which Godfrey denied. In the spring of 2021, Crane told Godfrey she was going to have the land surveyed, which she did. The survey revealed Godfrey was farming north of his deeded boundary, on Crane's land, by approximately 134 feet at the northeast corner and approximately 125 feet at the northwest corner. Following the completion of the survey, Crane purchased railroad ties and placed them along the surveyed south boundary of her property. Godfrey testified that he, or someone on his behalf, removed the railroad ties. Crane then had the surveyor come back and re-mark the southeastern corner marker or stake.

Crane filed a complaint and then an amended verified complaint to quiet title to the disputed property, claimed trespass by Godfrey, and requested ejectment and injunctive relief against him. In response, Godfrey filed an answer and counterclaim against Crane, asserting that he was entitled to the land by either: (1) boundary by agreement; or (2) adverse possession. Following a bench trial, the district court issued its findings of fact, conclusions of law, and memorandum decision and order. The district court denied both of Godfrey's counterclaims, granted Crane's quiet title claim, denied Crane's claim for the cost of the initial survey but reimbursed her for the cost related to having the surveyor re-mark the southeastern corner marker, denied Crane's claim for damages related to lost rental profits, and granted Crane's claim for trespass damages related to the farming on her land, awarding her $750 in damages. The district court found Crane was the prevailing party on her trespass action, in part, so she was entitled to attorney fees and costs on the trespass claim to the extent it was separable from the other portions of her trespass claim on which she did not prevail, and separable from her other claims and counterclaims. Finally, the district court found Crane was the prevailing party in the litigation for the purposes of an award of costs.

Crane filed a verified memorandum of costs and attorney fees and, thereafter, a motion for additional costs and fees, and various pleadings in support of the motions. She also filed a motion for reconsideration wherein she asked the district court to reconsider the scope of attorney fees awarded related to the trespass claim and to reconsider the amount of damages related to the trespass claim. The district court held a hearing on the motion for reconsideration and for Crane's attorney fee request. The court issued an order granting, but reducing, Crane's request for attorney fees. The court then granted Crane's motion to reconsider its underlying findings of fact and conclusions of law and issued a memorandum decision and order. Therein, the court made additional findings of fact and amended its conclusions of law. The district court reconsidered, but did not change, its denial of Crane's claim for the cost of the survey. Similarly, the court reconsidered, but did not change, the amount of trespass damages related to lost rental profits. Next, the district court granted Crane's motion for reconsideration as it related to the district court's conclusion that Crane was the prevailing party on her trespass action.

The district court entered an amended judgment, where it: (1) quieted title to Crane for the land in dispute; (2) awarded Crane civil trespass damages against Godfrey; (3) dismissed Godfrey's counterclaims; (4) awarded Crane a reduced amount of attorney fees associated with her civil trespass claim; and (5) awarded Crane costs associated with the prosecution of her complaint and the defense of Godfrey's counterclaims. Godfrey appeals and Crane cross-appeals.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury, the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps. Inc.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho

4

354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

## III.

## ANALYSIS

### A. The District Court Did Not Err in Dismissing Godfrey's Counterclaim for Adverse Possession

Godfrey argues the district court erred by denying his counterclaim for adverse possession. Oral claims for adverse possession are governed by Idaho Code § 5-210.[1] This section requires that the land subject to the adverse possession claim must have been enclosed, cultivated, or improved; the possession must have been for a period of twenty years; and the adverse possessor must have paid all taxes levied and assessed on the land. *See Luce v. Marble*, 142 Idaho 264, 272,

---

[1]      Idaho Code § 5-210 provides:

For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:
(1) Where it has been protected by a substantial enclosure.
(2) Where it has been usually cultivated or improved.
Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of twenty (20) years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law. Provided further, that adverse possession shall not be considered established under the provisions of any sections of this code if a written instrument has been recorded in the real estate records kept by the county recorder of the county in which the property is located and such written instrument declares that it was not the intent of a party to such instrument, by permitting possession or occupation of real property, to thereby define property boundaries or ownership. Provided further, that for purposes of establishing adverse possession pursuant to this section, a person claiming adverse possession must present clear and convincing evidence that the requirements of subsection (1) or (2) of this section have been met.

5

127 P.3d 167, 175 (2005). The party claiming adverse possession must prove all the essential elements of adverse possession by clear and convincing evidence.[2] *Id.* In addition to the requirements of Idaho Code § 5-210, the possession must have been actual, open, visible, notorious, continuous, and hostile to the party against whom the claim is made. *Luce*, 142 Idaho at 272, 127 P.3d at 175.

In this case, the district court found Godfrey and the prior owners of the Godfrey property encroached upon the Crane property for more than the statutory period of twenty years by cultivating to the established crop line. Crane argues Godfrey did not establish all the I.C. § 5-210 elements of adverse possession because he failed to show he paid all taxes levied and assessed on the land. Godfrey argues the district court did not err because he was not required to show he paid taxes because the "lot number" exception applies. The "lot number" exception states:

> [I]n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, *and taxes are assessed by a lot number or by government survey designation, rather than by metes and bounds description*, payment of the taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the statute. (emphasis added).

*Roark v. Bentley*, 139 Idaho 793, 796, 86 P.3d 507, 510 (2004) (quoting *Scott v. Gubler*, 95 Idaho 441, 443-33, 511 P.2d 258, 260-61 (1973)).

We need not address whether the district court erred in determining Godfrey met the tax requirement of adverse possession because, as discussed below, Godfrey fails to demonstrate his possession was hostile against Crane for the statutory period. Without the essential element of hostility, Godfrey cannot establish his adverse possession claim and, thus, we need not address the "lot number" exception to the tax requirement of adverse possession.

In finding that Godfrey's encroachment on Crane's land was not hostile, the district court found that neither Crane nor Godfrey discussed with their predecessors, either generally or specifically, the location of the coterminous north/south boundary. The district court concluded

---

[2] Although *Luce* uses the phrase "clear and satisfactory evidence," that standard is the same as clear and convincing evidence. "While our prior decisions have variously used 'clear and satisfactory', 'clear, satisfactory and convincing' and 'clear and convincing' to denote a standard of proof higher than a preponderance of the evidence, we see no articulable difference among them." *Lynch v. Cheney*, 98 Idaho 238, 243 n.3, 561 P.2d 380, 385 n.3 (1977). For ease of reference, we will use clear and convincing as the burden of proof in this opinion.

6

that the official north/south coterminous boundary was unknown to the parties, so Godfrey was farming to the historically established crop line mistakenly believing he was farming his own property. The district court stated:

> Such a state of mind, by definition, is not adverse, i.e., open, notorious and hostile, to the rights of Crane and her predecessors in relation to the disputed approximate seven (7) acres. Rather, it is a mistaken belief of ownership, not an open, hostile, and notorious claim of ownership adverse to Crane's rights.
> []In fact, there is no evidence in the record which establishes that any of the predecessors to [Godfrey] were acting adverse, in an open, notorious and hostile manner with respect to the Crane Property and the owners of the same with regard to the disputed approximate 7 acres. What the evidence establishes is an uncertain boundary and that the previous owners/occupiers of the two (2) parcels either mistakenly or [as] a matter of convenience established a crop line for purposes of farming. Further, the previous owners/occupiers of the two (2) parcels established a fencing demarcation, the cross-brace, wherein the [Godfrey] Property owner fenced to the south and the Crane Property owner fenced to the north. Neither of these established landmarks are precisely on the coterminous north/south border of the Crane Property and the [Godfrey] Property and neither establish the boundary between the two (2) properties.

As a result, the district court held that Godfrey failed to establish, by clear and convincing evidence, that his encroachment was "open, notorious and hostile" to the ownership of the Crane property owners for the statutory period of twenty years.

Godfrey argues the district court erred by concluding his mistaken belief as to the true boundary did not constitute an open, notorious, and hostile claim of adverse possession. To support his argument, Godfrey cites *Beneficial Life Ins. Co. v. Wakamatsu*, 75 Idaho 232, 270 P.2d 830 (1954) for the proposition that his mistaken belief regarding ownership of Crane's property should not defeat his claim for adverse possession. Godfrey argues he was entitled to a presumption of adversity[3] and, thus, the burden should have shifted to Crane to rebut that presumption. Godfrey further argues the district court erred by sua sponte concluding that Godfrey's use was not open, notorious, and hostile because the court did not cite any rebuttal evidence of permissive use and the word "convenience" was only uttered once at trial. Finally,

---

[3] "The general rule is that where no evidence is presented to establish how the use began, a presumption arises that the use was adverse and under claim of right. The owner of the servient estate must then rebut that presumption by showing the use was 'permissive, or by virtue of a license, contract, or agreement.'" *Christle v. Scott*, 110 Idaho 829, 831, 718 P.2d 1267, 1269 (Ct. App. 1986) (internal citations omitted).

Godfrey asserts the district court's reference to the establishment of the crop line "as a matter of convenience" was erroneous because the court did not cite any legal authority regarding "convenience" as evidence of accommodation. While Crane does not cite *Beneficial Life Ins.*, she argues both Cleston and Monty Godfrey's testimony reveals the crop line was situated at the most convenient location to turn around farm equipment. This, Crane argues, demonstrates a presumption of permissiveness which would negate Godfrey's claim of adverse possession.

Evidence relevant to the original purpose for the boundary is instructive as to whether the possession of the disputed property is hostile. An early development of this proposition began in *Brown v. Brown*, 18 Idaho 345, 110 P. 269 (1910). In *Brown*, Peter Brown was the original owner, ultimately conveying the property at issue to his son, Otis Brown. *Brown*, 18 Idaho at 349-50, 110 P. at 271. Rhodes was the original owner of the other property, which was ultimately conveyed to E.B. Brown. *Id.* at 348, 110 P. 270. Some years prior to the dispute, Peter Brown approached Rhodes and said he wanted to put up a fence on the property line between the two properties. *Id.* at 350, 110 P. 271. The surveyor did not have time to provide a survey but suggested that if Peter would "go at noon and run it by the shadow of some one who would stand on the corner, that that would give the north and south line." *Id.* Rhodes and Peter guessed where the relevant corner and corner marker were and had Rhodes' son stand on the corner, and they then ran the north/south line by the boy's shadow; that was how the parties arranged to construct the north and south fence. *Id.* at 350-351, 110 P. 271. Rhodes also testified that neither he nor Peter Brown knew where the east/west line was and did not use the above method to establish the east/west fence. *Id.* at 351, 110 P. 271. Instead, the parties agreed to build the east/west fence where it was and agreed they would put it on the true east/west boundary when a survey was done. *Id.* Finally, Rhodes testified that there was never any agreement or understanding that Peter Brown would have or receive any of Rhodes' land based on the location of the fence and, although Peter Brown thought the fence encroached upon his land, he was satisfied to let it remain until the land could be surveyed. *Id.* The north/south fence encroached on Rhodes' land approximately 122 feet and the east/west fence lines encroached on Rhodes' land for approximately nine to twelve feet, resulting in Peter Brown fencing 1.81 acres of Rhodes' land. *Id.* at 348, 110 P. 270.

Otis Brown brought a quiet title action to the 1.81 acres based on a boundary by agreement claim; i.e., that the north/south fence and the east/west fence established the agreed upon boundaries of the properties. *Id.* at 347, 110 P. at 270. E.B. Brown disputed the claim and asserted

8

ownership of the land based on Rhodes' original ownership of the disputed acreage. *Id*. at 347-48, 110 P. at 270. The *Brown* Court held that the 1.81 acres originally belonged to Rhodes pursuant to the original government survey and Rhodes' patent thereto. *Id*. at 348, 110 P. 270. The Court further held that Otis Brown, the subsequent owner of Peter Brown's land and the adverse possessor of E.B. Brown's land, could not use either of the fences as a property boundary marker because neither fence was constructed to designate the true lines between the subsequent contiguous owners. *Id.* at 357, 110 P. at 273. Rather, the location of the fences was the result of the parties needing a way to demarcate their contiguous boundaries and arriving at the location of the fence by agreement. *Id.* at 352, 110 P. at 272. Thus, the parties agreed that they did not know the actual boundary marker of either the north/south boundary or the east/west boundary but agreed to demark the property in some way with the understanding that, in the future, the correct boundaries would be identified and the boundaries would then be adjusted accordingly. In that scenario, the demarcation--whether a fence line or a crop line--cannot act as conclusive proof of acquiescence that the marker establishes the true boundary.

A different conclusion was reached in *Beneficial Life Ins.* There, a fence was constructed some time prior to 1911 or 1912 between the coterminous north/south boundaries of the properties at issue. *Beneficial Life Ins.*, 75 at 237, 270 P.2d at 833. The fence ran diagonally from the true line on the eastern side of the coterminous north/south boundary to a point approximately seventy-three feet south of the true line on the western side of the coterminous north/south boundary. *Id.* A survey was done in 1911 or 1912 and again in 1951 by the same surveyor. *Id.* The surveyor noted the fence was in the exact same position in 1951 as it was in 1911 or 1912. *Id.* The owner of the northern property continuously farmed to the fence line, with the exception of some land that could not be farmed. *Id.* at 239-40, 270 P.2d at 834-35. Sometime during 1920-1922, McKenna owned the northern lots and Jensen owned the southern lots. *Id.* at 238, 270 P.2d at 834. Jensen asked McKenna why the fence line was not on the true line at the western side of the north/south boundary, and McKenna responded that because the fence had been in place for many years, it became, and thus marked, the western boundary of the north/south coterminous boundary. *Id.*

The Idaho Supreme Court found that, as to the portion of the disputed fence line, the land north of the original fence (the fence constructed prior to 1911 or 1912) was "continuously enclosed, occupied, cultivated and farmed by the defendants and their predecessors for more than

forty years before this action was commenced. During all that time they exercised these acts of ownership over the disputed area openly and visibly." *Id.* at 240, 270 P.2d at 835. The Court went on to hold that the

> long continued possession by defendants and their predecessors, coupled with their complete dominion and open and visible acts of ownership, gives rise to the presumption that their possession was adverse.
>
> Such possession is regarded as adverse even though it was originally taken through ignorance or mistake as to the true boundary, and without any specific intent to enter upon the land of another.

*Id.* at 241, 270 P.2d at 835-36 (citations omitted). In finding the possession to be adverse regardless of whether the possession arose from a mistaken boundary, the Court stated: "There is no evidence here that the location of the original fence was dictated by convenience, or that it was erected merely as a barrier, or that it was located pursuant to an agreement to move it to conform to the true line upon the making of a survey." *Id.* at 242, 270 P.2d at 836.

Unlike *Brown*, the fence at issue in *Beneficial Life Ins.* was recognized as the boundary line dividing the properties, not as a conveniently located boundary marker which was to be adjusted in the future. Courts in Idaho have revisited and affirmed the concept of determining whether the boundary was permissive, thereby defeating an adverse possession claim, based on whether the boundary line was established for purposes of establishing a surveyed boundary line or some other purpose, such as convenience. *See Fry v. Smith*, 91 Idaho 740, 741-42, 430 P.2d 486, 487-88 (1967) (determining adverse possession was not established where fence was constructed as matter of convenience rather than marking boundary between properties of parties); *see also Scott*, 95 Idaho at 445, 511 P.2d at 262 (noting adverse possession established where adverse possessor erected fence on what they believed was boundary line but was not precisely on surveyed line between two properties); *Christle v. Scott*, 110 Idaho 829, 831, 718 P.2d 1267, 1269 (Ct. App. 1986) (rejecting an adverse possession claim where fence used for livestock, rather than as boundary, was created as matter of convenience, winding and meandering according to lay of the land).[4]

---

[4]    Not only has evidence of convenience been used to defeat claims of adverse possession, it has also been applied to negate the element of adversity for prescriptive easements claims. *See Baxter v. Craney*, 135 Idaho 166, 174, 16 P.3d 263, 271 (2000) (holding use of property in question was permissive where landowner was "simply being neighborly" by allowing fence to be moved to give his neighbor's cattle access to water).

There are similarities between this case and *Beneficial Life Ins.* In *Beneficial Life Ins.*, the land at issue was continuously enclosed, occupied, cultivated, and farmed by the defendants and their predecessors for more than forty years before the action commenced. *Beneficial Life Ins.*, 75 Idaho at 240, 270 P.2d at 835. The Court found during that time the defendant exercised acts of ownership over the disputed area openly and visibly. *Id.* In this case, the district court likewise found Godfrey and his predecessors encroached upon the Crane property for the statutory period of twenty years by cultivating the established crop line on a mistaken belief of ownership. Monty testified at trial:

| | |
|---|---|
| [Godfrey's attorney]: | Okay. And Cleston has testified that that strip encompasses approximately seven acres. Do you have any reason to doubt that? |
| [Monte Godfrey]: | No. |
| [Godfrey's attorney]: | Okay. In that strip, did you always farm that strip during your possession of the property? |
| [Monte Godfrey]: | Yes. |
| [Godfrey's attorney]: | Okay. You did that openly? |
| [Monte Godfrey]: | Yes. |
| [Godfrey's attorney]: | You did it because you believed you had that right to it? |
| [Monte Godfrey]: | Yes. |
| [Godfrey's attorney]: | Did you believe that was your land? |
| [Monte Godfrey]: | Yes. |

Cleston Godfrey also testified as to his belief about ownership of the property:

| | |
|---|---|
| Court: | Mr. Godfrey, before I turn it over to cross-examination for Mr. Higgins, you responded in response to Mr. Bulger's question, you were claiming that property as your rightful property-- referring to the strip between the survey line and the crop line as your rightful property. You said, yes, that's the way I understood it. What do you mean by, the way you understood it? |
| [Cleston Godfrey]: | I understood that was my rightful property. |
| Court: | So that's what you believed, and that's the way you acted? |
| [Cleston Godfrey]: | Yes. |

Conversely, C. Corbett, Crane's predecessor in interest of the property, testified that he believed that by fencing from the cross brace to the north, he was fencing his property lines; Eastern Idaho Grazing Association, Corbett's predecessor in interest, also told Crane that the cross brace marked the southern boundary of the property.

11

Although Godfrey believed the property to be theirs, the undisputed evidence at trial revealed that prior to the survey Crane commissioned, a survey had not been conducted on the land since 1875. No evidence was presented that Godfrey believed the crop line aligned with either the 1875 survey or the more recent survey commissioned by Crane. The record does not indicate any evidence was presented at trial to support Godfrey's belief that the crop line established the property boundary marker except the fact that he farmed to that line which, as he testified, he did because it was the most convenient location to turn around farm equipment. Unlike in *Scott*, where the adverse possessor mistakenly believed the fence was on the surveyed line, in this case, Godfrey's crop line was 125-134 feet away from the surveyed line and nothing in the record indicates Godfrey thought the crop line was on the surveyed line. Thus, the record does not establish that Godfrey created the crop line mistakenly thinking it was on the surveyed line. Also like in *Beneficial Life Ins.*, there was Monte's testimony that he believed the crop line was the boundary line. However, in this case, evidence of another purpose--farming convenience--was introduced at trial.

On the issue of convenience, we begin by noting that in Godfrey's opening brief, he asserts, "The [district court] does not cite to legal authority regarding 'convenience' as such evidence of accommodation, because no such authority appears to exist in Idaho case law." While it is true that the district court did not cite any legal authority in drawing this conclusion, Godfrey's argument that no such authority exists ignores the plain language of *Beneficial Life Ins.* Further, while Godfrey asserts that the word "convenience" was uttered only once at trial, that statement does not accurately depict the evidence presented that the crop line was established for farming convenience:

| | |
|---|---|
| [Crane's attorney]: | Was there ever a fence along that line? |
| [Cleston Godfrey]: | No, none that I'm aware of. |
| [Crane's attorney]: | Trees? |
| [Cleston Godfrey]: | Nope. |
| [Crane's attorney]: | Do you know why they didn't make it a straight line? |
| [Cleston Godfrey]: | I don't. I've got my assumption, but I don't know. |
| [Crane's attorney]: | Would that assumption go back to the convenience of farming? |
| [Cleston Godfrey]: | Possibly. |

The word "inconvenience" was also used to describe why the crop line was in the most convenient position for farming:

| | |
|---|---|
| [Crane's attorney]: | Okay. And, in fact, I think you testified that if that line was moved twenty feet to the north or to the south, it would make a great inconvenience to farm it because of having to farm around the outcropping? |
| [Cleston Godfrey]: | That would be my, yeah, my assessment. |

Further testimony demonstrated the position of the crop line was established for farming convenience because it was the best location to turn the farming equipment around:

| | |
|---|---|
| [Godfrey's attorney]: | Okay. So I want to make sure I understand. Let's, as an example, let's say that the crop line moved north. What problems would that present, if any, for the person farming the southern portion of that? |
| [Cleston Godfrey]: | Well, you would leave a sliver there up the-- |
| [Godfrey's attorney]: | When you say "there" you're referring to the-- |
| [Cleston Godfrey]: | North side of the outcropping. If it had moved, you know, twenty, thirty, forty feet, there would have been no way to go up there and turn and come back down. |

And,

| | |
|---|---|
| [Godfrey's attorney]: | Okay. Did you ever--and this is--because we're referring to photographs here, I want to make sure that my question is detailed enough so that the record--because she's just taking this down--that it is understandable exactly what we're referring to. Looking at that rock outcrop there, it is--it appears to me somewhat--somewhat in line with the crop line, but it tends to veer slightly to the northwest; is that accurate? |
| [Monty Godfrey]: | Pretty close, yes. |
| [Godfrey's attorney]: | Okay. Did you ever farm any of the property above that [promontory], that outcrop point that you referred to, those rocks you said that were in the way, did you ever farm above that? |
| [Monty Godfrey]: | No. |
| [Godfrey's attorney]: | Would it have been impractical to farm that property above that? |
| [Monty Godfrey]: | Yes. It was full of rocks. |

And,

| | |
|---|---|
| [Godfrey's attorney]: | I'm saying if the line had ever--if this line were moved north, would it ever be practical for you to farm right above where my thumb is indicating there? |
| [Monty Godfrey]: | No. |
| [Godfrey's attorney]: | Why not? |

13

| | |
|---|---|
| [Monty Godfrey]: | Probably wouldn't be wide enough to where you could turn your equipment around. |
| [Godfrey's attorney]: | That's a consideration, I presume, to make sure all farmers can get their equipment in and out and-- |
| [Monty Godfrey]: | Yeah. |
| [Godfrey's attorney]: | And you always only use machinery to farm; right? |
| [Monty Godfrey]: | Right. |

Thus, at trial, the district court heard conflicting evidence on the purpose of the crop line as either or both a property boundary marker or as merely a matter of convenience. On appeal, Godfrey argues the district court erred by concluding the crop line was established as a matter of farming convenience rather than as the property boundary marker. We decline to address Godfrey's weighing argument because appellate courts in Idaho do not reweigh evidence. *Wilson v. Mocabee*, 167 Idaho 59, 68, 467 P.3d 423, 432 (2020). Rather, our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah*, 147 Idaho at 77, 205 P.3d at 1213; *Cummings*, 115 Idaho at 188, 765 P.2d at 699. Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie*, 110 Idaho at 351, 715 P.2d at 1021. Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses*, 120 Idaho at 357, 815 P.2d at 1097. We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy*, 151 Idaho at 442, 259 P.3d at 588. Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull*, 156 Idaho at 772, 331 P.3d at 514; *Hutchison*, 130 Idaho at 940, 950 P.2d at 1279.

Based on the testimony at trial, the district court's conclusion that the crop line was established as a matter of farming convenience, as outlined above, was supported by substantial and competent evidence. The district court heard the testimony and assessed the evidence and the credibility of the witnesses. Thereafter, the district court concluded that neither party nor their predecessors discussed the specific boundaries for the property and that the evidence established an uncertain boundary that the previous owners/occupiers of the two parcels either mistakenly thought was a boundary or, as a matter of convenience, established the crop line for purposes of farming. The crop line and the fence cross brace established demarcations for the property but

neither established the boundary between the two properties. Because there is substantial and competent evidence supporting the district court's factual finding that the crop line was established as a matter of farming convenience, rather than as a boundary marker, we accept the district court's factual finding as correct.

Given that factual finding, the district court held that Godfrey's mistaken belief of ownership, by definition, could not be open, notorious, and hostile to the rights of Crane and her predecessors and, thus, Godfrey could not establish the elements of adverse possession, let alone establish them by clear and convincing evidence. The court also concluded that, based on the evidence that the crop line was established for farming convenience, Godfrey's "occupation without hostile intent . . . does not constitute adverse possession." Thus, held the district court, Godfrey's open, notorious, and hostile encroachment onto Crane's land did not commence until 2016; so, it did not meet the twenty-year statutory requirement to establish a claim of adverse possession.

Although Godfrey argues the district court erred in concluding a mistaken belief about ownership cannot establish hostile occupation, even if that was error, the district court alternatively found the crop line was established as a matter of convenience not as a boundary marker, thereby precluding a claim of adverse possession. "When a decision is 'based upon alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.'" *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (quoting *MacLeod v. Reed*, 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct. App.1995)).

As discussed above and in *Brown*, 18 Idaho at 352, 110 P. at 273, and *Fry*, 91 Idaho at 741-42, 430 P.2d at 487-88, and noted in *Beneficial Life Ins.*, 75 Idaho at 242, 270 P.2d at 836, a putative adverse possessor cannot establish a claim of adverse possession where a property line is constructed or established as a matter of convenience rather than as a boundary marker. Thus, the district court did not err in denying Godfrey's claim for adverse possession.

**B.    The District Court Did Not Err in Dismissing Godfrey's Counterclaim for Boundary by Agreement**

Alternatively, Godfrey argues the district court erred by denying his counterclaim for boundary by agreement. Godfrey's position is that the long period of acquiescence between him and his predecessors with Crane and her predecessors should lead to an inference of boundary by agreement. Godfrey argues that in denying his counterclaim for boundary by agreement, the

15

district court improperly weighed the evidence. Crane argues the district court correctly concluded that Godfrey failed to establish boundary by agreement. Crane disagrees with the district court that there was an uncertain or disputed boundary but agrees that Godfrey failed to show an agreement fixing the boundary. Additionally, Crane argues that even if Godfrey proved an agreement existed, that agreement would not apply to Crane because she was a purchaser in good faith, a status that she contends takes priority over any claim of boundary by agreement.

Boundary by agreement or acquiescence has two elements: (1) there must be an uncertain or disputed boundary, and (2) a subsequent agreement fixing the boundary. *Owen v. Smith*, 168 Idaho 633, 642, 485 P.3d 129, 138 (2021). A long period of acquiescence by one party to another party's use of the disputed property provides a factual basis from which an agreement can be inferred. *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001). However, acquiescence, by itself, does not constitute a boundary by agreement. *Owen*, 168 Idaho at 642, 485 P.3d at 138. A fence or other visible demarcation is necessary to give later purchasers constructive notice of the agreed-upon boundary. *Id.*

In denying Godfrey's counterclaim for boundary by agreement, the district court first held Godfrey failed to demonstrate the existence of an express agreement, either between Crane and Godfrey, or any of their predecessors, establishing the crop line as the official boundary between the two properties. Godfrey does not challenge this finding on appeal, so we accept this factual finding. The district court then held Godfrey failed to establish the existence of an implied agreement establishing the crop line as the boundary between the two properties. Godfrey challenges this finding on appeal.

In concluding Godfrey failed to establish an implied boundary by agreement, the district court began by holding that Godfrey established the first element of boundary by agreement because there was an uncertain boundary between the two properties prior to the survey Crane commissioned. Crane challenges this finding on appeal, arguing that: (1) the location of the true boundary line was known by one of the parties; (2) because it was known, an agreement between the parties purporting to establish another line as a boundary constituted an attempt to convey real property in violation of the statute of frauds; and (3) boundaries by agreement must have attributes of permanence, stability, and a definite location and, thus, the crop line is inadequate as a boundary line because it has not always remained in the same place. Godfrey argues the district court did

16

not err in finding that he established the first element of boundary by agreement because Crane's arguments rely on speculation, ignore substantial evidence, and are not supported by case law.

To support her position that the location of the true boundary was known and not uncertain, or was not in dispute, Crane argues that two of her and Godfrey's predecessors knew where the correct boundary line was. We decline to adopt Crane's position because it relies on speculation. Neither of the predecessors Crane references testified at trial. While witnesses at trial testified about what they thought the predecessors believed, this testimony was speculative and is insufficient to establish by clear and convincing evidence that the parties knew the correct boundary.

Next, *Griffel* disposes of Crane's arguments regarding whether a crop line has the requisite attributes of permanence, stability, and definite location for a boundary by agreement claim. In *Griffel*, the Idaho Supreme Court considered a boundary by agreement premised on farming lines. *Griffel*, 136 Idaho at 401, 34 P.3d at 1084. The dispute in *Griffel* arose when successors in interest bought a parcel of land and had it surveyed. *Id.* at 399, 34 P.3d at 1082. The survey revealed that the legal description of their property extended beyond the established farming lines to the north and west. *Id.* When the successors attempted to build a fence along the deeded property lines, the neighbors sued, claiming that the farming lines constituted the actual property line on a theory of boundary by agreement. *Id.* The *Griffel* Court agreed, concluding that the farming lines had the requisite attributes of certainty and permanence because they had not substantially changed for more than twenty years. *Id.* at 401, 34 P.3d at 1084. The Court held that a boundary by agreement was established because the adjoining landowners tacitly accepted the farming lines as visible evidence of their dividing lines for a long period of time. *Id.* Thus, contrary to what Crane argues, farming lines can possess the requisite attributes for a boundary by agreement claim.

In this case, both parties testified that the crop line had not substantially changed for at least twenty years prior to this suit. Thus, Crane's argument about a crop line being insufficient as a boundary line is unpersuasive. The district court did not err in concluding that Godfrey met the first element of boundary by agreement because there was an uncertain boundary line between the two properties.

For the second element of boundary by agreement, the district court concluded that while a crop line was established, both owners also had an established practice of fencing to a particular cross brace on the north/south fence line on the west side of the two properties. The district court

17

noted that neither the historical crop line nor the cross brace was precisely on the boundary line reflected by the survey Crane commissioned. The district court also noted that Monty acknowledged the fence on the western border, presumably the cross brace, as a landmark for his north/south property line as well. Also, as evidence establishing the fencing cross brace as the property line, the district court noted that Monty testified that when this dispute arose, Monty advised Cleston to inspect the cross brace in relationship to the crop line.

In finding Godfrey failed to establish the second element, the district court stated:

> The Court also concludes that there is a dearth of evidence supporting the proposition that the Crane's predecessors in interest and [Godfrey's] predecessor in interest had an implied agreement regarding the north/south property boundary. Certainly, the evidence does not rise to the requisite level of clear, satisfactory and convincing. On the one hand, [Godfrey] argues that the historical crop line established perhaps as early as 1965 establishes the necessary acquiescence to establish an implied agreement. However, the evidence also establishes that the cross-brace has been the demarcation between the Crane Property and the [Godfrey] Property for purposes of fencing since the fence was first erected for the purpose of keeping cattle out of the Crane Property and [Godfrey] Property. The quantum of evidence in support of the cross-brace or the established crop line being the property line is relatively equal in nature. The Court concludes that the weight of the evidence in support of the crop line being the agreed upon boundary by implication does not rise to the level of clear, satisfactory or convincing.

On appeal, Godfrey argues the district court erred by giving equal weight to the cross brace as the boundary demarcation as it does to more than twenty years of established crop line. Godfrey claims this finding is not supported by the evidence and is an abuse of discretion.

As discussed above, we decline to address Godfrey's weighing argument because appellate courts in Idaho do not reweigh evidence. *Wilson*, 167 Idaho at 68, 467 P.3d at 432. Thus, we limit our review of the district court's factual findings to whether substantial and competent evidence supported them.

At trial, both parties called witnesses who explained the practice of fencing to the cross brace on the west side of the two properties. The testimony was consistent: Crane paid for and repaired fencing north of the cross brace and Godfrey paid for and repaired fencing south of the cross brace. This testimony was not disputed. Based on this testimony, we find substantial and competent evidence supported the district court's conclusion that the cross brace constituted a demarcation between the Crane property and the Godfrey property.

Next, both parties testified about the crop line and introduced evidence of aerial photographs depicting the crop line. Neither party disputed the presence of the crop line or practice

18

of farming to it each year. Thus, a review of the record shows substantial and competent evidence supports the district court's conclusion that a historical crop line also demarcated a boundary between the Crane property and Godfrey property.

The district court was in the best position to weigh the evidence and assess the credibility of the witnesses' testimony regarding the cross brace as one demarcation between the properties and the crop line as another demarcation between the properties. The district court concluded that because there was essentially a similar quantum of evidence presented as to each demarcation, neither rose to the level of establishing by clear and convincing evidence that either was the correct or most appropriate boundary marker. We will not reweigh the evidence regarding the demarcations to determine whether either or both established a property boundary line; that was the job of the district court. There is substantial and competent evidence supporting the district court's factual findings, thus, the district court did not err in finding Godfrey failed to establish the second element of boundary by agreement. Additionally, because Godfrey failed to show that an implied agreement existed between him and Crane, we need not address Crane's argument that if there was an implied agreement, that agreement no longer existed once Crane purchased the property because she was a purchaser in good faith.

Finally, Godfrey argues the district court erred by failing to analyze the evidence based upon the *Griffel* case. Godfrey contends that if the district court had applied the reasoning and conclusion of *Griffel* to the facts in this case, the similarities between the two cases would have resulted in Godfrey prevailing on his claim of boundary by agreement. We agree with Godfrey that there are similarities between the *Griffel* case and this case with respect to the presence of farming lines. However, while *Griffel* stands for the proposition that farming lines can be adequate demarcations for a boundary by agreement claim, *Griffel* does not stand for the proposition that a crop line is the only demarcation or carries more weight than another demarcation such as here, a cross brace, for determining a boundary line in a boundary by agreement claim. In this case, the district court found there were two potential boundary markers, the cross brace and the crop line, which provided different demarcations between the two properties. Thus, the district court's conclusion about whether an agreement existed did not turn on the applicability of *Griffel*, but rather turned on the weight of evidence in support of the two different demarcations. As already discussed, we will not reweigh the evidence on appeal. The district court did not err in finding Godfrey failed to establish boundary by agreement.

19

### C.	Crane's Claims on Cross-Appeal

#### 1.	Crane waived her claim of trespass damages

On cross-appeal, Crane first argues the district court erred by declining to award Crane damages related to the trespass. We decline to address Crane's claim of trespass damages because of her failure to comply with Idaho Appellate Rule 35(a)(6), which requires the appellant to include in her opening brief "the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." As held in *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016), the failure to identify the applicable standard of review and apply it was fatal to the appellant's argument that the district court abused its discretion.

On cross-appeal to this Court, Crane does not cite any standard of review for her claim of trespass damages. Her analysis similarly fails to sufficiently address the standard of review, identify the legal standard that was applicable to the district court, or identify which prong of the analysis the district court failed to comply with. Thus, we decline to address her cross-appeal about trespass damages.

#### 2.	The district court abused its discretion in reducing some of the amount of attorney fees and costs

Next, Crane argues the district court abused its discretion by arbitrarily reducing her award of attorney fees and costs from the amount Crane requested in her memorandum of costs and fees. Crane argues the district court did not comply with the requirements of Idaho Rule of Civil Procedure 54(e)(3), including failing to: address the level of skill possessed by counsel; provide guidance or explanation as to which entries it considered or the amount of the adjustments; and specify which time entries it considered unnecessarily duplicative. Godfrey did not object to any specific entries or generally to the amount billed. Citing I.R.C.P. 54(e)(7) and *Stanger v. Walker Land & Cattle, LLC*, 169 Idaho 566, 576, 498 P.3d 1195, 1205 (2021), the district court concluded that because there was no objection, it had no obligation to articulate the basis for its adjustments. Crane argues that when the party against whom fees are assessed does not object and the district court thereafter sua sponte reduces the amount of attorney fees, the court should explain the basis for doing so. Otherwise, argues Crane, she is deprived of an opportunity to explain and justify the entries. Godfrey argues the district court did not abuse its discretion because it adequately provided the reasons for reducing the amount of fees it awarded to Crane under I.R.C.P. 54(e)(3).

Further, Godfrey argues that because he did not object to any specific entries or generally to the amount billed by Crane's attorney, the district court had no obligation under Idaho case law to articulate the specific basis for its adjustments.

The calculation of the amount of the award of attorney fees is committed to the sound discretion of the district court. *Mihalka v. Shepherd*, 145 Idaho 547, 553, 181 P.3d 473, 479 (2008). In exercising its discretion, the district court must consider the factors from I.R.C.P. 54(e)(3).[5] *Lettunich v. Lettunich*, 145 Idaho 746, 749, 185 P.3d 258, 261 (2008). Rule 54(e)(3) employs the term "must" and is mandatory. The rule requires the district court to consider all eleven factors plus any other factor it deems appropriate. *Lettunich*, 145 Idaho at 749-50, 185 P.3d at 261-62. A court need not specifically address all the factors contained in I.R.C.P. 54(e)(3) in writing so long as the record clearly indicates that the court considered them all. *Mihalka*, 145 Idaho at 553, 181 P.3d at 479.

Rule 54(e)(7) provides in relevant part: "If there was a timely objection to the amount of attorney fees, the court must include in the order its reasoning and the factors it relied on in determining the amount of the award." *Stanger* cites to *Frizzell v. DeYoung*, 167 Idaho 801, 812, 477 P.3d 236, 247 (2020) for the proposition that the district court must only explain its reasoning in a written decision where a timely objection is made. *Stanger*, 169 Idaho at 576, 498 P.3d at 1205. In *Frizzell*, the DeYoungs filed a motion for attorney fees and costs, totaling $98,478.80 against Frizzel; Frizzel did not object to the motion. *Frizzell*, 167 Idaho at 804, 477 P.3d at 240.

---

[5]    The factors set forth in I.R.C.P. 54(e)(3) are:
(A) the time and labor required;
(B) the novelty and difficulty of the questions;
(C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
(D) the prevailing charges for like work;
(E) whether the fee is fixed or contingent;
(F) the time limitations imposed by the client or the circumstances of the case;
(G) the amount involved and the results obtained;
(H) the undesirability of the case;
(I) the nature and length of the professional relationship with the client;
(J) awards in similar cases;
(K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;
(L) any other factor which the court deems appropriate in the particular case.

The district court awarded the DeYoungs $168,478.80; $70,000 of the award constituted the damages awarded by the jury and the remainder was $98,478.80 in attorney fees and costs against Frizzell. *Id*. On appeal, Frizzel challenged the award, arguing the district court failed to consider the I.R.C.P. 54 factors when calculating the amount of attorney fees. *Frizzel*, 167 Idaho at 812, 477 P.3d at 247. The Supreme Court held that because Frizzel did not file an objection in the district court, the district court did not have to include a written decision addressing the I.R.C.P. 54(e)(7) factors. *Frizzel*, 167 Idaho at 812, 477 P.3d at 247. Thus, when a party against whom attorney fees are assessed does not timely file an objection in the district court, that party waives any objection to the award of fees.

This reasoning is sound; where a party fails to object to a motion for attorney fees, that party cannot argue the district court abused its discretion in its award of those fees because failing to object to the motion for attorney fees constitutes a waiver. *Frizzell*, however, does not stand for the proposition that a district court need not address the I.R.C.P. 54(e)(3) factors if it sua sponte reduces the amount of fees.

The district court held a hearing on the requested attorney fees and then issued written findings. Therein, the district court noted that although Godfrey did not file an objection to Crane's requested attorney fees, it had an independent obligation to review the reasonableness of the attorney fees; it was required to consider the I.R.C.P. 54(e)(3) factors and any other factor the court deemed appropriate; in the absence of an objection, it was not required to make specific findings on the record; and it could use information from its own knowledge and experience. In its written order, the district court specifically noted that it considered I.R.C.P. 54(e)(3)(A), (B), (C), (D), (F), (G), (H), and (I). The court noted the other subparagraphs were not applicable. The court then concluded that because Godfrey did not object to the attorney fee request, either generally or specifically, the court had no obligation to articulate the specific basis for its adjustments, it was only required to establish that it considered each of the I.R.C.P. 54(e)(3) factors.

The Court found the hourly rate of $250 per hour, which was billed through part of the case, was reasonable but reduced the $325 hourly rate to $300 per hour because the $300 per hour was "more consistent and in [] line with the standard rate this Court has seen and awarded in litigation in Caribou, Bear Lake, and Franklin Counties (the high end)." This was error. The district court's reliance on its memory of awards in other cases does not negate the evidence presented that the $325 rate was reasonable. Thus, the district court erred by reducing the rate.

22

The district court also explained that it reduced some of the fees related to work done by the attorney that it found were more "administrative and routine" in nature; adjusted the request on the basis that some of the tasks were "either duplicative, excessive, or unnecessary" in the court's discretion; and adjusted the fees related to the request for a summary judgment motion that was prepared, briefed, and filed but subsequently withdrawn. Here, the district court erred because it did not sufficiently articulate which of the attorney's fees were duplicative or wrong. Therefore, after identifying which fees it decided to reduce or eliminate, the district court must recalculate the fees with the correct hourly rate.

The district court also made some adjustments to the time spent preparing for the second trial, concluding that some of the work was duplicated as some of it was done in preparation for the first trial. Trial preparation is not a "one and done" endeavor. Here, to the extent the district court reduced the preparation fees as duplicative, that was error.

The remaining reductions the district court made to Crane's attorney fees are affirmed. On these reductions, the district court provided sufficient reasoning under the I.R.C.P. 54(e)(3) factors. Therefore, the district court abused its discretion in reducing some of Crane's award of attorney fees and costs, and we remand for correction consistent with this opinion.

### 3. Crane waived her claim of costs of survey

Crane's final argument on cross-appeal is that the district court erred by denying Crane's motion for costs of survey as reasonable costs associated with investigating the trespass. We decline to address Crane's claim of trespass damages because of her failure to comply with I.A.R. 35(a)(6), which requires the appellant to include in her opening brief, "the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." As held in *Cummings*, 160 Idaho at 853, 380 P.3d at 174, the failure to identify the applicable standard of review and apply it was fatal to the appellant's argument that the district court abused its discretion.

## D. Attorney Fees on Appeal and Cross-Appeal

Godfrey requests an award of attorney fees and costs on appeal pursuant to I.C. § 12-120(2) and § 12-207. Because Godfrey did not prevail on appeal, he is not entitled to attorney fees. Crane requests attorney fees on appeal and cross-appeal pursuant to I.A.R. 40, I.A.R. 41(a), I.C. § 6-202(3), and I.C. § 12-120(1), and I.C. § 12-121. All the authority Crane cites for attorney fees on appeal, or cross-appeal, require her to be a prevailing party. I.A.R. 40; I.C. § 6-202(3), I.C. § 12-

120(1), and I.C. § 12-121. Where a party loses on its cross-appeal, it is not a prevailing party. *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 274, 483 P.3d 313, 331 (2021); *see Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012) ("[A] respondent should carefully consider whether to file a cross-appeal because losing the cross-appeal may result in not being able to recover attorney fees incurred in defending the appeal."). While Crane prevailed in defending issues presented on appeal, she did not prevail on the majority of her claims on her cross-appeal. Accordingly, Crane is not a prevailing party, so she is not entitled to attorney fees or costs on appeal or cross-appeal.

## IV.

## CONCLUSION

Godfrey fails to demonstrate the district court erred in denying his counterclaims for adverse possession and boundary by agreement. Crane waived her claims of trespass damages and costs of survey on cross-appeal. The district court abused its discretion by reducing some of the amount of attorney fees. Thus, we affirm the district court's judgments dismissing Godfrey's counterclaims; denying Crane's claim for trespass damages; and denying Crane's claim for costs of survey. We vacate the judgment granting, but reducing Crane's award of attorney fees and costs, and remand for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.